## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA DAVIS, on behalf of herself and** | : | **CIVIL ACTION** |
| **all other similarly situated persons** | : | |
| | : | |
| **v.** | : | **NO. 03-6060** |
| | : | |
| **KRAFT FOODS NORTH AMERICA** | : | |
| | : | |

**Diamond, J.**                                                                 **November 30, 2006**

### MEMORANDUM

      Debra Davis alleges that Kraft Foods has discriminated against African-American employees working in Kraft's Philadelphia Bakery with respect to job classification and discipline.  *Complaint at 1-2, Doc. # 1.*  On January 31, 2006 I denied with prejudice Davis's Motion for Class Certification with respect to her claims of discriminatory job classification, concluding that she did not meet Rule 23(a)'s typicality requirements.  F. R. Civ. P. 23(a).  I denied without prejudice Davis's Motion for Partial Class Certification with respect to her claims of discriminatory discipline, ruling that her counsel was inadequate under Rule 23(a) because it was burdened by a conflict of interest.  <u>Davis v. Kraft Foods North America</u>, 2006 WL 237512 (E.D. Pa 2006), *Doc. # 53.*  Represented by new counsel, Davis has filed an Amended Complaint and renewed her Motion for Class Certification.  *Doc. # 71.*  Kraft asks me to strike portions of Davis's Supplemental Memorandum of Law in Support of Class Certification, arguing that Exhibits 7, 8, and 9 are subject to the "self-critical analysis privilege."  *Doc. # 72.*  I deny Kraft's Motion.

**BACKGROUND**

As I explained in my earlier ruling, Kraft acquired its Philadelphia Bakery from Nabisco in December 2000. Davis v. Kraft, 2006 WL 237512 at *1, *Doc. #53*. In April 2005, Nabisco's former Director of Diversity, David Matthews, provided Davis's former counsel with several boxes of documents that related to Nabisco's employment practices. *Motion to Strike at 1*. Kraft argued that the self-critical analysis privilege barred disclosure of a number of these documents. See Clark v. Pennsylvania Power and Light, Co., 1999 U.S. Dist. LEXIS 5118, *5 (E.D. Pa.) (explaining and applying the privilege). I agreed, and, on May 18, 2005, precluded Davis from using several of the documents. *5/18/05 Order, Doc. # 25*.

On October 13, 2006, Kraft moved to strike three documents produced by Matthews and attached as Exhibits 7, 8, and 9 to Davis's Supplemental Memorandum on Class Certification, arguing that they are protected by my May 18th Order. *Doc. #72*. Exhibit 7 is a 1999 "Executive Summary" of a minority and non-minority employee compensation analysis prepared by Nabisco's "Affirmative Action Diversity Group." Exhibit 8 is an undated two-page summary of employee responses to a survey on race relations conducted by Nabisco. Exhibit 9 consists of charts and graphs from a 1999 report depicting demographically disciplinary actions taken by Nabisco.

After reviewing Kraft's Motion to Strike and Davis's response, I ordered the parties to submit new briefs addressing the question of whether the self-critical analysis privilege is recognized in this Circuit. Acting *mea sponte*, I vacate my previous Order and conclude that my earlier ruling recognizing the privilege was incorrect.

## NATURE OF PRIVILEGE

The self-critical analysis (or "self-evaluation") privilege protects evaluative materials created in accordance with Federal Government requirements or for purposes of "self-improvement."  See Note, *The Privilege of Self-Critical Analysis*, 96 Harv. L. Rev. 1083, 1083 (1983) (discussing early development of the privilege).  Courts have applied the privilege to encourage employers both to comply with anti-discrimination laws and to evaluate compliance efforts without fear that those evaluations will be used against them.  Clark, 1999 U.S. Dist. LEXIS 5118 at *5; McClain v. Mack Trucks, 85 F.R.D. 53, 58 (E.D. Pa. 1979).  Whether a document is subject to the privilege is usually determined by a three part test: 1) the party asserting the privilege must have prepared the document to comply with Government requirements or for self-critical analysis; 2) the data sought is subjective or evaluative; and 3) the policy favoring non-disclosure clearly outweighs plaintiff's need for the documents.  See e.g. Dowling v. American Hawaii Cruises, Inc., 971 F.2d 423, 425-26 (9th Cir. 1992) (discussing the test for the privilege but refusing to apply it); Clark, 1999 U.S. Dist. LEXIS 5118 at *5 (setting out the test and applying the privilege).

## VIABILITY OF PRIVILEGE IN THIS CIRCUIT

Given the Third Circuit's statements respecting the self-critical analysis privilege, I do not believe the Court will recognize its existence.  For instance, in Armstrong v. Dwyer, the Court referred to "the so-called self-critical analysis privilege."  155 F.3d 211, 214 (3d Cir. 1998).  Similarly, in In re Grand Jury, the Court cited with approval a Minnesota decision "deferring to [the] legislature to create a privilege for self-evaluation data."  103 F.3d 1140, 1155 (3d Cir. 1997) (citing In re Parkway Manor Healthcare Ctr., 448 N.W. 2d 116, 121 (Minn. Ct.

3

App. 1989)).  These decisions are of a piece with a substantial body of law disfavoring judicially-created privileges:

> [A]s a court without the ability to consider matters beyond the evidentiary record presented, we should be chary about creating new privileges and ordinarily should defer to the legislature to do so.

In re Grand Jury, 103 F.3d at 1155.  See also Branzberg v. Hayes, 408 U.S. 665, 706 (1972) (suggesting that the creation of new privileges should be left to legislatures); Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000) (exercising caution in the creation of a privilege between a child and a mental health care provider); U.S. v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999) (privileges should be narrowly construed and only cautiously expanded); In re Grand Jury Investigation, 918 F.2d 374, 383 (3d Cir. 1990) (exercising caution in the creation of clergy-communicant privilege); U.S. v. Roberson, 859 F.2d 1376, 1378 (9th Cir. 1988) (federal courts construe evidentiary privileges narrowly, as privileges obstruct the search for the truth); Memorial Hosp. for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981) (privileges are disfavored and should be narrowly construed); ACLU of Mississippi, Inc. v. Finch, 638 F. 2d 1336, 1344 (5th Cir. 1981) (privileges are strongly disfavored in federal law).

A majority of the Circuits have refused to recognize or apply the self-critical analysis privilege.  See In re Qwest Communications Intern, Inc., 450 F.3d 1179, 1198 n. 8 (10th Cir. 2006) (only a minority of states have recognized the self-critical analysis privilege); Burden-Meeks v. Welch, 319 F.3d 897, 899 (7th Cir. 2003) (declining to recognize the self-critical analysis privilege); Union Pacific R. Co. v. Mower, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000) (same); In re Kaiser Aluminum and Chemical Co., 214 F.3d 586, 593 (5th Cir. 2000) (same); Reynolds Metals Co. v. Rumsfeld, 564 F.2d 663, 667 (4th Cir. 1977) (refusing to apply the self-

4

critical analysis privilege to protect disclosures to the E.E.O.C.).  But see LaClair v. City of St. Paul, 187 F.3d 824, 828-29 (8th Cir. 1999) (affirming a District Court's exclusion of documents based on the privilege and other doctrines but failing explicitly to adopt the privilege); F.T.C. v. TRW, Inc., 628 F.2d 207, 210-11 (D.C. Cir. 1980) (recognizing the privilege but refusing to apply it to documents sought by a government agency); Bredice v. Doctors Hospital, Inc., 479 F.2d 920 (Table of unreported decisions) (D.C. Cir. 1970) (affirming the District Court's application of the privilege, widely acknowledged as the first court to do so).

Although the Supreme Court has not explicitly refused to recognize the privilege, it refused to apply the analogous "peer review privilege" in a Title VII race and sex discrimination suit.  University of Pennsylvania v. E.E.O.C., 493 U.S. 182, 188 (1990). Significantly, the Court noted its reluctance to recognize in Title VII litigation any privilege not explicitly created by Congress  Id. at 189.

In light of this authority, I cannot conclude that the self-critical analysis privilege is viable in this Circuit, especially in Title VII litigation.  Accordingly, I must deny Kraft's Motion to Strike, which is based primarily on the privilege.

I also note that of the three Exhibits Kraft seeks to strike, only one includes the kind of subjective, evaluative material to which the privilege could even arguably apply.  Exhibit 9 includes graphs and charts breaking down demographically Nabisco's 1999 disciplinary actions.  Even if the privilege were viable in this Circuit, it would not apply to such objective data.  See Clark, 1999 U.S. Dist. LEXIS 5118 at *5.  Exhibit 8 summarizes the results of an undated employee survey Nabisco conducted on diversity issues.  Once again, assuming the privilege's viability, it would not apply to this kind of objective summary of employee opinion.

Id. at *5, *6.  Exhibit 7 is a one and a half page "Executive Summary" prepared in 1999 by

Nabisco's "Affirmative Action Discovery Group" of the company's compensation analysis

respecting minority and non-minority employees.  It is clearly a draft document with many

handwritten changes and deletions.  The first page includes only objective data, describing

various federal requirements and the steps Nabisco took to gather and analyze the compensation

data summarized.  The last half page includes recommendations and analysis respecting

Nabisco's compensation efforts.  Although the privilege could apply to this kind of subjective

self-analysis, I do not believe Kraft's need for non-disclosure clearly outweighs Davis's need for

the document.  See Dowling, 971 F.2d at 425-26.  Accordingly, even if the privilege were viable,

it would not afford Kraft the protection it seeks here.

                    Finally, Kraft argues that even if the privilege does not apply to the disputed

Exhibits, I should nonetheless strike them because they do not relate to discipline imposed at the

Philadelphia Bakery or are outside the class period.  Once again, I disagree.  The Exhibits relate

to how Nabisco (Kraft's predecessor) treated its minority employees immediately before Kraft

took over the Philadelphia Bakery.  Whatever the Exhibits' probative value, I cannot conclude

that they are not relevant to the question of whether I should certify a class of minority employees

alleging disparate treatment.  See Jack B. Weinstein & Margaret Berger, Weinstein's

Federal Evidence §401.03 (2d ed. 2004) ("Trial judges have broad discretion to determine

whether an item of evidence is relevant"); Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994) (F.

R. Evid. 401 gives judges great freedom to admit evidence, but "diminishes substantially their

authority to exclude evidence as irrelevant").

**CONCLUSION**

        The Third Circuit has not recognized the self-critical analysis privilege, and is unlikely to do so.  Accordingly, I vacate my May 18, 2005 Order applying the privilege.  In the alternative, I conclude that even if the privilege were recognized in this Circuit, it would not apply to the disputed Exhibits.  Finally, Kraft's relevance objections do not justify striking the Exhibits.

        An appropriate Order follows.

                                  **By the Court.**

                                  */s Paul S. Diamond*

                                  _____

                                  **Paul S. Diamond, J.**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA DAVIS, on behalf of herself and** | : | **CIVIL ACTION** |
| **all other similarly situated persons** | : | |
| | : | |
| **v.** | : | **NO. 03-6060** |
| | : | |
| **KRAFT FOODS NORTH AMERICA** | : | |

## O R D E R

      **AND NOW**, this 20th day of November, 2006, upon *mea sponte* reconsideration of my May 18, 2005 Order applying the self-critical analysis privilege to documents produced by David Matthews, as well as consideration of Letter-briefs submitted by the Parties on the self-critical analysis privilege, it is hereby **ORDERED** that my May 18, 2005 Order be vacated.

      It is further **ORDERED** that

          1) Plaintiff file the challenged Exhibits and any other documents produced by Matthews under seal.

          2) Plaintiff shall submit by December 14, 2006 supplemental memorandum in her Motion for Class Certification without any encumbrance based on the privilege.  Defendant's response must be filed by December 28, 2006 date.

          3) After my decision on class certification, Plaintiff shall be permitted to take a supplemental deposition of David Matthews, Nabisco's former Director of Diversity by telephone to investigate further issues previously protected by the self-critical analysis privilege.  Plaintiff's counsel indicated by letter preference to defer a second Matthews deposition until after the decision

on class certification.  That deposition shall be limited to three and a half hours.  Defendant may also question Matthews during this deposition.

**AND IT IS SO ORDERED.**

*/s Paul S. Diamond*

_____

**Paul S. Diamond, J.**